GEORGE H. POTTER v. FLINT & PERE MARQUETTE RAILROAD CO.

*Gross negligence—Chargeable to a party who approaches a railroad crossing, along a highway in sight of the track for 40 or 50 rods—The statutory sign being also visible for a like distance—And when within 3 or 4 rods of the crossing his horses are startled by the whistle of the engine—And in attempting to cross in advance of the approaching train a collision ensues, dislocating his arm—For which he brings suit—Duty of highway travelers to keep a due lookout—If they fail to heed what they ought to heed they must bear the consequences.*

1. Where, in a suit against a railroad company to recover damages for its alleged negligence in not giving the proper bell and whistle signals, and not in having a sign at a crossing, it appeared that plaintiff was riding with another party, who drove along a highway for 40 or 50 rods in sight of the railroad track, which it gradually approached and finally intersected at said crossing, where the statutory sign was up and plainly visible for the distance named; and that another party, who was driving in advance of plaintiff, crossed the track just in time to avoid an approaching train, the whistle of which

startled the horses after which plaintiff was riding when some three or four rods from such crossing, and the driver let them go forward, thinking that the safer course to pursue and hoping to avoid a collision with the train, which struck his horses and sleigh, dislocating plaintiff's arm:—

*Held*, that the case was properly taken from the jury, plaintiff's *gross* negligence preventing a recovery.

**2.** It is the duty of all highway travelers to keep a due lookout, and if they do not choose to heed what they *ought* to heed they must bear the consequences.

Error to Bay.    (Green, J.)    Argued June 10, 1886. Decided June 17, 1886.

Case.    Plaintiff brings error.    Affirmed.    The facts are stated in the opinion.

*A. McDonell*, for appellant.

*Wisner & Draper*, for defendant.

CAMPBELL, C. J.    Plaintiff sued for damages as resulting from an injury at a crossing on the morning of February 27, 1883.

Plaintiff and two other persons, who had been working at a lumber camp near Farwell, left the camp that morning about day-break, and reached Farwell not far from 8 o'clock. After a short stop they started again in two sleighs, and went down the highway between one and two miles before reaching the place of the accident.    The front sleigh belonged to one Graham, and two horses, belonging to plaintiff, were hitched to it behind.    Plaintiff followed in another sleigh driven by one Martindale, with a team of two horses.    They drove at an easy trot or fast walk.

The road ran parallel with the defendant's railway, and not many rods distant from it, until within about 48 rods of the crossing, when it made an angle, and continued southeastwardly to and over the track.    Between the crossing and the beginning of the turn the ground is clear of any obstructions beyond some low bushes, and the railroad track was several feet higher, and generally visible.    Beyond the bend there

were woods between the highway and track. Fourteen rods west of the crossing a small stream crosses the railway under a bridge or culvert, and the same stream crosses the highway at the same distance from the crossing ;. the highway and its bridge being some feet lower than the crossing level. The day was clear, and there was snow on the road to some depth.

When the two sleighs, which were near together, had come near the crossing, the train was approaching, and the foremost one was driven across in advance of it, getting over clear, with the led horses behind it. The second sleigh, driven by Martindale, came after, and, according to plaintiff and Martindale, was about three or four rods off, when a blast of the whistle startled the horses, and Martindale let them go forward without checking them, thinking it safer, and that he might get over. One horse and the sleigh came in contact with some part of the train, and were struck, the horse killed and the sleigh broken. Plaintiff and Martindale were thrown out, and plaintiff's arm was dislocated. He went on in the train, but suffered for some time from the injury, which left some permanent effects.

The declaration counts upon fault in the defendant in not giving the proper bell and whistle signals, and in not having a sign at the crossing. It also avers undue speed; but of this there was no proof. The plaintiff's testimony negatived hearing the bell or whistle until the train was near. The defendant's testimony showed the signals were given, and Graham testified the noise of the sleighs on the snow prevented hearing other noises. The testimony was undisputed that the proper crossing sign was up, and plainly visible through the whole distance to the bend in the road.

The court below held that on plaintiff's own showing he made out no case, and we are of the same opinion. For between 40 and 50 rods the railroad was in full sight; and, if plaintiff is believed, the train itself must have been visible if they had taken the least pains to look. The ways were so near together as to make it impossible for any one to avoid discovering the danger of the approach without the most extreme heedlessness. The sign-board was in plain sight for

a long distance, and admonished them that there was a crossing before them. If they did not see it, they were in fault for not doing so. No plainer warning could be devised, and no reason is given or is imaginable why they did not stop or in any way act upon it. If men do not choose to heed what they ought to heed they must bear the consequences.

It is the duty of all highway travelers to keep a due lookout. There may be some conflict of testimony upon other points, but upon plaintiff's gross negligence there is no conflict. A railway collision endangers the safety of all on the train, as well as that of the colliding parties, and there can be no excuse for recklessly running into danger which may lead to such perilous consequences to others. In its ruling the court below assumed the accuracy of all of plaintiff's proofs, as it must have done in order to justify taking the facts from the jury. The showing is a very singular one; but we need not remark upon its peculiarities, because it indicates an entire want of care in plaintiff.

The judgment must be affirmed.

SHERWOOD and CHAMPLIN, JJ., concurred. MORSE, J., did not sit.