CHRIS. F. MYNNING, ADMINISTRATOR OF THE ESTATE OF PHILLIP A. MYNNING, DECEASED, v. THE DETROIT, LANSING & NORTHERN RAILROAD COMPANY.[1]

[See 59 Mich. 257.]

*Directing verdict—Contributory negligence—Duty of person crossing railroad track.*

1. As a general proposition, it is the right of the jury to judge of the sufficiency of the evidence introduced to establish any one or more facts in the case upon trial; but when there is a *total* defect of evidence as to any essential fact, the case should be withdrawn from their consideration. *Conely v. McDonald,* 40 Mich. 158.

2. It is the duty of the trial judge on request, before submitting the case to the jury, to decide, as a preliminary question of law, whether there is *any* evidence on which the jury could properly find a verdict for the party on whom the burden of proof lies; and, if there is not, he ought to withdraw the case from the jury. *Carver v. Detroit & Saline Plank Road Co.,* 61 Mich. 584.

3. The absence of contributory negligence is not necessary to be shown beyond cavil or question. If the circumstances are such that reasonable minds might draw different conclusions respecting the fault of the injured party, he is entitled to go to the jury upon the facts, the judge directing a verdict only when the case is susceptible of but one just opinion. *Teipel v. Hilsendegen,* 44 Mich. 461.

[1] See 35 N. W. Rep. 811. for third opinion in this case, ending the litigation.

| | |
|---|---|
| 64 | 93 |
| 66 | 160 |
| 67 | 678 |
| 64 | 93 |
| 69 | 112 |
| 69 | 113 |
| 64 | 93 |
| 70 | 551 |
| 64 | 93 |
| 78 | 277 |
| 64 | 93 |
| 79 | 588 |
| 64 | 93 |
| 81 | 45 |
| 64 | 93 |
| 83 | 571 |
| 64 | 93 |
| 86 | 505 |
| 64 | 93 |
| 90 | 598 |
| 90 | 608 |
| 64 | 93 |
| 94 | 583 |
| 64 | 93 |
| 96 | 309 |
| 96 | 324 |
| 64 | 93 |
| 99 | 310 |
| 64 | 93 |
| 127 | 203 |
| 127 | 206 |
| 64 | 93 |
| 143 | 6382 |
| 143 | 2383 |
| 64 | 93 |
| j147 | 1214 |
| 64 | 93 |
| 145 | 0196 |
| 64 | 93 |
| 153 | 1 47 |
| 64 | 93 |
| 157 | -165 |
| 158 | 6 82 |

4. Where a man possessed of ordinary faculties, and acquainted with a certain railroad crossing, on a dark and stormy evening walked at a rapid pace towards and upon it, without checking his speed, or stopping, or listening, or taking any precaution whatever to ascertain whether a train was about to pass, which was seen and heard by others who were about to cross the track, with no better opportunities for observation, and, as he stepped upon the crossing, was struck and killed by the train, which had no light upon its rear end, nor was any warning given by whistle or bell,—

   *Held,* that he was guilty of such contributory negligence as prevents a recovery by his administrator, and that the circuit judge should have directed a verdict for the defendant.

5. A railroad track is a warning of danger to those who go upon it, and persons about to cross are bound to recognize the danger, and make use of the sense of hearing as well as of sight; and, if either cannot be rendered available, the obligation to use the other is the stronger to ascertain, before attempting to cross, whether a train is in dangerous proximity; and if they neglect to do this, but venture blindly or carelessly upon the track, it must be at their own risk. *Such* conduct is of itself negligence.

6. The legal presumption is that a person killed at a railroad crossing did stop, and look and listen, and will prevail in the absence of *direct* testimony on the subject. But where there is affirmative, direct, and creditable testimony to the contrary, this presumption is rebutted.

Error to Mecosta. (Fuller, J.)    Argued October 28, 1886.    Decided January 6, 1887.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Palmer & Palmer* and *H. J. Hoyt,* for appellant.

*Andrew Hanson,* for plaintiff.

[The opinion and cases cited are so decisive of the points decided that abstracts of briefs of counsel are omitted.— REPORTER.]

CHAMPLIN, J. On the thirtieth day of October, 1882, as Phillip A. Mynning was crossing a spur track of the defend-

ant, he was run over by a train of cars and killed. The accident occurred while he was walking along one of the public streets in the city of Big Rapids, between six and seven o'clock in the evening. At this time it was quite dark. A rain-storm was approaching, with considerable wind from the south-west. The deceased was walking rapidly east, and the train was backing from the north.

This action is brought by the administrator of deceased to recover damages for the wrongful and negligent killing of Phillip A. Mynning. After averring the duty of the railroad company in the running and management of its trains at the point in question, the negligence claimed is set out in the following language, namely:

"Running said locomotive engine, with a train of freight cars attacheds, backward, and at a high and dangerous rate of speed, in the dark, without giving any signals by sounding the whistle or ringing the bell, and without having any light at or upon the rear end of said train of freight cars attached to said locomotive engine, or any head-light upon said engine, to warn people who were crossing, or about to cross, said spur or side track of said defendant, running over and crossing said Baldwin street, of the approach of said locomotive engine, with a train of freight cars attached, and so that the employés of said defendant upon said locomotive engine, and upon said train of freight cars attached, who were operating and managing said locomotive engine, and the said train of freight cars attached, could see persons who were crossing, or about to cross, the said spur or side track of said defendant where the same crosses said Baldwin street, by reason whereof the said Phillip A. Mynning, who was lawfully walking along said Baldwin street at the point where said spur or side track crosses the same, and while he was in the exercise of due and proper care, and without fault or negligence on his part, was struck and run over by said freight cars attached to said locomotive engine, so willfully, recklessly, wrongfully, and negligently run and operated by said defendant, as aforesaid, whereby, and by reason whereof, the said Phillip A. Mynning was then and there, to wit, at the city of Big Rapids, in said county of Mecosta, on the day and year aforesaid, struck by said freight cars attached to said locomotive engine, and instantly killed."

The testimony introduced upon the trial respecting the defendant's negligence was conflicting, and consequently, upon that point, was a proper question for the jury to determine. The main question in the case, however, turns upon whether the deceased was himself in the exercise of ordinary care at the time of the accident, and whether he did not, by his own careless or negligent conduct, or by the neglect to exercise due care, contribute to the injury complained of.

After the testimony on behalf of the plaintiff was closed, the defendant orally demurred to the evidence, and moved the court to direct the jury to find a verdict for the defendant, on the ground that the plaintiff's evidence established affirmatively and conclusively that plaintiff's intestate was wanting in due care, and that his own negligence contributed to his death. The court declined to hear argument, and overruled the motion. The testimony subsequently introduced did not in any respect vary the probative force of that given upon this point when plaintiff closed his case. Defendant's counsel again requested the court to instruct the jury that, under the evidence in the case, the injured or deceased person was guilty of contributory negligence, and their verdict must be for the defendant.

The testimony is all returned in the bill of exceptions, and it is proper that this question should be considered first; for, if the point is well taken, it virtually disposes of the case, and the other errors assigned become unimportant.

Counsel for plaintiff claims that it does not lie within the province of the trial judge to take the case from the jury, but that it is the privilege and right of the jury to judge of the sufficiency of the evidence introduced to establish any one or more facts in the case upon trial.

As a general proposition, this is true; but, when there is a total defect of evidence as to any essential fact, the case should be withdrawn from the consideration of the jury. *Conely v. McDonald*, 40 Mich. 158. The motion made at the

close of the plaintiff's proofs raised precisely this question: Whether, taking all the testimony introduced by plaintiff as true, and all legitimate inferences to be drawn therefrom, there was any evidence tending to prove that the deceased was in the exercise of ordinary care at the time of the accident; the defendant claiming that it affirmatively appeared from such testimony that the negligence of the deceased contributed to the accident which resulted in his death. This raised a question of law, which it was the duty of the trial judge to decide.

If, at the time the plaintiff closed his proofs, there was no evidence upon a material point in issue upon which the plaintiff had the burden of proof, or if it affirmatively appeared by his own showing that he had no cause of action upon the undisputed testimony introduced by him, the defendant was entitled, at that stage of the case, to a direction from the court to the jury to find a verdict for the defendant. Equally so, under the same circumstances, was defendant entitled to such direction after all the evidence was introduced. It is the duty of the judge when asked to do so, before submitting the case to the jury, as a preliminary question of law, to decide whether there is any evidence on which the jury could properly find a verdict for the party on whom the *onus* of proof lies; and, if there is not, he ought to withdraw it from the jury. *Carver v. Detroit & Saline Plank Road Co.*, 61 Mich. 584.

The ruling of the court denying the motion, and refusing the request to charge, renders it necessary to examine fully the testimony introduced upon the trial in order to determine whether error in law was committed by such ruling.

The Muskegon river runs nearly south through the city of Big Rapids. Baldwin street runs east and west, and is connected on either side of the Muskegon river by a bridge. A mill-race leading from the river, north of Baldwin street,

crosses the street about 150 feet east from the bridge. The spur track of the defendant extends, from a point south, to the mills along the race, and to the river above the mills, and at the point where it crosses Baldwin street is between the race and river,—about 55 feet from the race, and 90 feet from the river.

On the night of the accident there was a lamp at the east end of the bridge over Muskegon river, which was lighted. In approaching the railroad track from the west, there was nothing to obstruct the view north of Baldwin street for a distance of about 400 feet. The train had been made up north of Baldwin street, and consisted of box cars and flat cars laden with lumber,—11 in all. The deceased, at the time of the accident, resided about one mile east of the city, but had lived in the city, and was familiar with the railroad crossing at Baldwin street.

Three witnesses were introduced by plaintiff who saw the accident. Two of these, Mr. Wakeman and Mr. Trafford, were walking west on Baldwin street. When they were upon the bridge which spans the mill-race, and about 55 feet from the crossing, they saw the train approaching from the north. They testify that a person with a lighted lantern was upon the rear car, swinging the light as if signaling. The train was in rapid motion, and neither heard the sound of bell or whistle. They both saw Mr. Mynning approaching the crossing from the west. He was then about 20 or 30 feet from the crossing, walking rapidly, bent a little forward, as was natural to him, with his head down. He did not pause, or look to the left or right, but kept on, and stepped upon the crossing, and was struck by the rear car, and taken from their sight. The opportunity of these witnesses for observation was aided by the lamp which shone from the end of the bridge; the deceased being between them and the light. They were looking at him from the time they first saw him until he was struck by the train.

The other witness was John McLaughlin. He was walking east on Baldwin street, and saw Mynning about 75 feet ahead of him, as he was crossing the bridge. As he came off of the bridge, Mynning was 25 to 30 feet from him, and he saw Mynning walk right in front of the train, and saw it strike him. He saw the train before it struck Mynning, and stopped. He testifies that Mynning did not stop on approaching the crossing; that he was looking at him, and did not see him look either way, but he walked pretty fast.

Thomas P. Mortenson did not see the accident, but was approaching the crossing on Baldwin street, going east, when the train passed. He had a horse and buggy. When he came to the end of the bridge, his horse stopped, and he looked up, and saw the train crossing Baldwin street. He saw a light upon the train, but thinks it was upon top of the middle car in the train. He did not see the deceased.

William Polson met Mynning between the bridge and the crossing. He says he spoke to Mynning, who was walking rapidly east; that he (witness) walked on west; and, when he got close to the bridge, he heard a noise, and looked around, and saw the train passing Baldwin street. He heard the puffing of the engine, and saw some kind of show-lights from the smoke-stack, and he gave it as his opinion that, if he had been within five or ten feet from the railroad track, he could not have seen the train coming, or the light either, on account of the darkness, although he did not think it was too dark to have seen the light. On cross-examination this witness testified that, when he met Mynning, he was close to the railroad track, and about 40 feet from the bridge; that he (witness) went on towards the bridge, and was within 10 or 15 feet of it when he heard the train.

The testimony tended to show that Mynning was possessed of all his faculties; and there was no testimony given or claim made that he was not in full possession of the faculties of seeing and hearing. Neither of the above-named witnesses

heard any sound of a whistle or the bell, and all concurred in the opinion that the train was moving across Baldwin street at a high rate of speed.

I have given above substantially all the testimony tending to prove that the deceased was in the exercise of ordinary care. It shows conclusively, and without contradiction,—

1. That the deceased was a man possessed of the ordinary faculties.

2. That he was acquainted with the railroad crossing at Baldwin street.

3. That on a dark and stormy evening he walked at a rapid pace towards and upon the railroad track crossing Baldwin street, without checking his speed, or stopping, or looking, or listening, or taking any precaution whatever to ascertain whether a train was about to pass.

4. That others who were about to cross, whose opportunities for observation were no better than those of deceased, saw and heard the train.

5. That he stepped upon the crossing, and was struck by the train, which ran over and killed him.

The rule with reference to contributory negligence was laid down by this Court in the case of *Teipel v. Hilsendegen*, 44 Mich. 462, where it was said that—

"The absence of contributory negligence is not necessary to be shown beyond cavil or question. If the circumstances are such that reasonable minds might draw different conclusions respecting the plaintiff's fault, he is entitled to go to the jury upon the facts. The judge takes the case from the jury only when it is susceptible of but one just opinion."

The jury having passed upon the conflicting testimony with reference to the defendant's negligence in not giving warning by the sounding of the whistle or the ringing of the bell, and of the neglect, as alleged, to have a light upon the rear end of the train, by their verdict in plaintiff's favor, the negligence of the defendant in those respects must be considered as established, and we have the case of the deceased approaching the railroad crossing upon a dark and stormy night, without any other warning of danger than that afforded by the

track itself, the existence of which he knew, and that it was used almost daily in passing engines and cars over it. Had he taken the ordinary precaution upon approaching a railroad crossing, of looking or listening, in order to ascertain if the train was approaching, before stepping upon the track, it is evident from the testimony of the witnesses who witnessed the catastrophe that he would have seen or heard it. The testimony precludes the fact, or any inference to be drawn from the facts, that the deceased exercised any or the remotest degree of caution on that occasion. He passed along hurriedly, as if there was no railroad crossing there. From the testimony it is plain to me that the case is susceptible of but one just opinion upon his want of ordinary care. Ordinary care would have required him to at least look up and down the track before crossing; and, if the night was so dark as to make it difficult to distinguish a train approaching, then ordinary care would have called upon him to resort to his sense of hearing, and to pause, if need be, and listen, before entering upon the place of danger.

As was said when this case was here before (59 Mich. 260):

" The track itself is a warning of danger to those who go upon it, and persons about to cross a railroad track are bound to recognize the danger, and make use of the sense of hearing as well as of sight; and, if either cannot be rendered available, the obligation to use the other is the stronger to ascertain, before attempting to cross it, whether a train is in dangerous proximity; and if they neglect to do this, but venture blindly or carelessly upon the track, without any effort to ascertain whether a train is approaching, it must be at their own risk. Such conduct is of itself negligence."

In the former trial it was not clear that the party did not look and listen, and we thought that, under the testimony there given, the case was properly submitted to the jury upon that point. Upon this trial it clearly appears that he did not look, nor is there any evidence which would justify the inference that he listened, for the approach of the train.

In the case of *Mc Williams v. Detroit Central Mills Co.*, 31 Mich. 274, it was said that a passenger along the sidewalk of a public street has a right to expect some warning before any sudden backing of cars after standing still, and there should be very plain proof of negligence to bind him under such circumstances. But in that case the track was a private one, and it was pointed out that it stood on a different footing than an ordinary track. In that case the plaintiff's intestate was struck with the cars, and killed, while crossing a public street, by the cars being backed up suddenly after standing still. No one saw the accident, and it was not known for more than an hour after it happened.

The presumption of law is that the person killed at a crossing did stop, and look and listen, and will prevail in the absence of direct testimony on the subject. But where there is affirmative, direct, and creditable testimony that the person injured went upon the track without stopping to look and listen, the presumption is rebutted and displaced. *Pennsylvania R. R. Co. v. Weber*, 76 Penn. St. 168; *Reading & C. R. R. Co. v. Ritchie*, 102 Id. 425; *Powell v. Missouri Pac. Ry. Co.*, 8 Amer. & Eng. R. R. Cas. 467; *Haas v. Grand Rapids & I. R. R. Co.*, 47 Mich. 401.

Such is the testimony in this case, and there is none to the contrary. The showing of contributory negligence is much stronger than in *Pzolla v. Mich. Cent. R. R. Co.*, 54 Mich. 273, and we held in that case that the plaintiff was not entitled to recover because of such contributory negligence, and we affirmed the ruling of the court below in taking the case from the jury. See, also,' *Potter v. Flint & P. M. R. R. Co.*, 62 Mich. 22.

Our conclusion is, from the whole testimony bearing upon the question of contributory negligence, that it affirmatively appears that the negligence of the deceased directly contributed to the accident which resulted in his death, and for that.

reason the circuit judge should have directed a verdict for the defendant.

We are referred to the case of *Beisiegel v. N. Y. Cent. R. R. Co.*, 34 N. Y. 622, as holding that a foot passenger on a public crossing has a right to expect some warning upon approaching the railroad track. In that case the plaintiff was nonsuited in the trial court on the ground of contributory negligence. There was evidence which tended to show that the engine was running at a high rate of speed across a thoroughfare in a city without ringing the bell or sounding the whistle, and that plaintiff both looked and listened before attempting to cross. The nonsuit was set aside on the ground of the defendant's negligence, and that plaintiff was himself free from negligence. Another trial was had, and the case came before the court of appeals again, and is reported in 40 N. Y. 9, when the court was divided upon the question as to plaintiff's contributory negligence. James, J., said:

" The plaintiff knew that trains were often passing at this crossing. It was his duty, therefore, before starting to cross the track from his place of concealment, to have ascertained whether an approaching train or engine was coming, and within 15 feet of the place where he stood. One step in advance, which would have been perfectly safe, and a look east, would have shown him the danger; and his omission of this easy, simple precaution, demanded of all persons before entering upon a railroad crossing, was gross negligence contributing to the injury, and bars all right of action against the defendant, even though its agents or servants were also negligent."

But in *Grippen v. New York Cent. R. R. Co.*, 40 N. Y. 34, it was held that if the injured party, by looking up the track in the direction of the approaching train, could have seen it in time to avoid the injury, his omission to do so was negligence, and the refusal of the court thus to instruct the jury was error. This case, in some of its facts, was similar to the case at bar. The accident happened upon a stormy, snowing night. The defendant's servants were engaged in depositing

cars to be unloaded, and in picking up empty freight cars, and were moving a train of six cars backwards along the railroad track, called the South Branch. The plaintiff was familiar with the crossing, and drove a horse and cutter across the railroad track without stopping to look or listen.   Woodruff, J., said:

"These same considerations, applicable to the conduct of the railroad company or its agents, are alike applicable to the conduct of persons who are liable to be injured.   All the circumstances which render it more than usually difficult for them to see or avoid a train are so many reasons why they should be more vigilant and cautious on their part, and, instead of forming an excuse for omitting to use greater caution, impose it upon them with greater strictness."

And see, upon this point, *Harty v. Central R. R. Co.*, 42 N. Y. 468; *Gorton v. Erie Ry. Co.*, 45 Id. 660; *McGrath v. New York Cent. & H. R. R. R. Co.*, 59 Id. 468.

In the case last above cited, Mr. Justice Andrews said:

"In respect to a person traveling in a highway which is crossed by a railway, it has been settled, by a series of adjudications in this state, that he is bound, on approaching a crossing, to look and listen, if by so doing he can discover the proximity of a moving train, and that the omission to do so is an omission of ordinary care, which will prevent his recovering for an injury which might have been avoided if he had used his faculties of sight and hearing."

And, again:

"His duty to keep his faculties alert, and look and listen, does not at all depend upon the fact whether the railroad company does or does not perform its duty in giving the statutory signals."

The decisions in New York are in accord with those in this State, and is the established doctrine of all courts where the principles of comparative negligence do not obtain.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred.