## WILLIAMS et al. v. DANIELS et al.
### (No. 11854.)

Court of Civil Appeals of Texas. Fort Worth.
Oct. 15, 1927.

Rehearing Denied Nov. 26, 1927.

1. Trial ⬅142—Court may not take question from jury unless evidence is such that ordinary minds will not differ in conclusion drawn therefrom.

To authorize court to take question from jury, evidence must be of such character that there is no room for ordinary minds to differ as to conclusion to be drawn from it.

2. Homestead ⬅129(1)—Where grantor by deed in form, but in fact mortgage, conveys homestead, subsequent purchaser must take notice of possessor's title.

General rule is that where grantor by deed absolute in form, but in fact a mortgage, conveys homestead which is in fact in grantor's actual possession at time of subsequent conveyance by his grantee, or subsequent grantee in the chain of title, purchaser under subsequent conveyance must take notice of title under which one in possession is holding.

3. Homestead ⬅216—Evidence held for jury on question whether loan company purchasing note had notice of simulated sale of homestead.

In trespass to try title brought by husband and wife to establish homestead claim, where it was alleged deed had been executed to third party for purpose of borrowing money and that he gave note which was sold by homestead claimants to loan company, evidence held to require submission to jury question whether loan company had notice of simulated character of sale.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit by Ida Williams and husband against M. A. Daniels and others. From a judgment entered in accordance with peremptory instructions, plaintiffs appeal. Reversed and remanded.

Marvin B. Simpson and Leo Brewster, both of Fort Worth, for appellants.

L. C. Penry, of Stamford, for appellees.

CONNER, C. J. This suit was instituted by Mrs. Ida Williams, joined pro forma by her husband, John T. Williams, against M. A. Daniels, John Tarleton, and the National Loan & Investment Company of Detroit, Mich. The first count of plaintiff's amended petition, filed November 10, 1926, upon which the trial proceeded, is in the form of trespass to try title. In a second count she alleged, in substance, that on the 2d day of December, 1916, and ever since said time, the plaintiffs Ida Williams and John T. Williams had occupied the premises described in the petition as their homestead; that said property was acquired and paid for wholly out of the separate estate of Mrs. Williams and constituted a part of her separate estate; that there is of record in the deed records of Tarrant county a deed executed and acknowledged by the plaintiffs on October 1, 1924, purporting to convey to the defendant M. A. Daniels the property in question. It was alleged that said deed was not a valid deed, and that the same was not executed and acknowledged by them, and particularly by the plaintiff Mrs. Ida Williams, in the manner required for a married woman to convey her separate estate or her homestead; that said instrument was not a bona fide sale of said property, but was a pretended and simulated sale for the purpose of borrowing money on the homestead; that each of the defendants had notice of these facts, or had knowledge of such circumstances as put them on notice, and, therefore, that the transactions were void under the Constitution of Texas.

It was further averred that M. A. Daniels and John Tarleton and the National Loan & Investment Company were asserting some right, title, and interest in the described property, by virtue of said illegal deed, and were threatening to dispossess the plaintiffs. It was further charged that the defendants, and each of them, knew that such transaction was not a bona fide sale, but was a pretended sale for the purpose of borrowing money on the homestead; that if any of the defendants did not have actual knowledge that the transaction was a pretended sale for the purpose of borrowing money, they had notice of such circumstances as would have charged them with notice of the facts. On account of all which, the plaintiffs prayed for judgment for

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

title and possession of the land and the cancellation of the purported deed to M. A. Daniels.

We find no answer by defendants Tarleton and Daniels. The defendant loan and investment company, however, answered by a general demurrer and a general denial, and specially to the effect that it was without knowledge of the facts alleged in the special count of plaintiffs' petition tending to show that the transaction with Daniels was a simulated one. It averred the facts to be that the defendant Daniels was claiming to own the land described in the petition by virtue of a deed of conveyance from the plaintiffs to him, duly executed and acknowledged as required by law, subject to certain notes for part of the purchase money in said deed described; that at the time of the execution of the deed to Daniels, he, together with his wife, Selma Daniels, executed a note payable to J. T. Williams in the sum of $3,500, which said note J. T. Williams had duly assigned to the loan company in consideration of the sum of $3,500 paid to and for Williams.

It was further specially alleged that the loan company was without notice that the conveyance to Daniels was in fact and in truth not a sale of the land as described in the deed; that it had no notice of the homestead character of the land, or of the circumstances attending the execution of the deed, nor did it have knowledge of any facts that would indicate that the deed referred to or that the assignment of the note referred to were other than a bona fide sale and assignment of the note.

By way of cross-action, the defendant filed a lengthy plea, which we think unnecessary to fully develop, but which in substance constitutes a prayer for a foreclosure of its lien, etc.

The case was submitted to a jury which was peremptorily instructed to find in favor of plaintiffs Ida and John T. Williams against M. A. Daniels and wife, Selma Daniels, for title and possession of the premises described in the plaintiffs' petition, and in favor of the defendant loan and investment company against Daniels, in the sum of $3,960, with interest from February 1, 1926, at the rate of 10 per cent. per annum, together with 10 per cent. of the amount of such principal and interest as attorney's fees and foreclosure of the lien as prayed for in the answer of the defendant company, on the premises described, as against plaintiffs Ida Williams and her husband, John T. Williams, and the defendant M. A. Daniels and wife, Selma Daniels; and return a verdict in favor of John Tarleton against any and all claims made against him by the plaintiffs.

The verdict of the jury was returned, and judgment was entered in accordance with the peremptory instruction of the court, and the plaintiffs Ida Williams and her husband, John T. Williams, have duly prosecuted this appeal from said judgment.

Error is assigned to the action of the court in overruling the plaintiff's first application for a continuance or postponement of the case. The application was in due form and accompanied by the certificate of a physician, to the effect that Mrs. Williams was sick at home and unable to attend court and testify. We need not, however, discuss the merits of this assignment, in view of the fact that we have concluded that the judgment must be reversed upon another ground, which is presented in appellant's second assignment of error, to the effect that the evidence tends to show that the deed sought to be set aside by the plaintiffs was not an actual bona fide sale of the property, but was a pretended and simulated sale for the purpose of borrowing money, and that there is some evidence tending to show that the defendant loan and investment company had knowledge of circumstances from which a jury might find that appellant was put upon inquiry, and which, if followed up with reasonable care, would have led to full notice that the property was the homestead of the plaintiffs, and that the deal was not a bona fide sale, but a simulated one for the purpose of borrowing money.

[1] That the purported sale of the property in question to M. A. Daniels by the Williams was a simulated one, for the purpose of borrowing money, is not to be doubted if the testimony relating to the subject is to be believed. M. A. Daniels testified, in substance, that at the time of the conveyance to him he was in Little Rock, Ark.; that he knew nothing about the property and had no purpose to purchase it, but had, without reading, merely executed the papers at the request of J. T. Williams, who was his uncle. The evidence further tends to show that Williams and wife had continuously occupied the premises as their homestead, as alleged in plaintiff's petition. The only seriously contested question, as we understand the record, is whether the loan and investment company had notice of the simulated character of the sale. The contention of appellants is that there is such evidence, or at least that the evidence shows facts of such a character as to put the loan company upon notice of the true character of the transaction with Daniels, and hence that the court erred in giving the peremptory instruction in favor of the loan company as it did. The rule relating to the subject is well established. Our Supreme Court, in Lee v. Railway Co., 89 Tex. 588, 36 S. W. 65, said:

"To authorize the court to take the question from the jury, the evidence must be of such character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it."

In Mynning v. Railway Co., 64 Mich. 93, 31 N. W. 147, 8 Am. St. Rep. 804, the rule is thus stated:

"If the circumstances are such that reasonable minds might draw different conclusions respecting the plaintiff's fault, he is entitled to go to the jury upon the facts. The judge takes the case from the jury only when it is susceptible of but one just opinion."

See Joske v. Irvine, 91 Tex. 575, 44 S. W. 1059.

We have carefully considered the evidence and feel unable to say that it is of such a character under the rule announced as authorized the court to deprive the plaintiffs of their general right of a trial by jury. The appellees do not question the sufficiency of the evidence to authorize a finding that the sale to M. A. Daniels was a simulated one for the purpose of obtaining money with which Williams desired to extinguish certain mechanics' and tax liens upon his homestead; and the evidence further shows, in substance, that J. T. Williams, in the effort to secure the money, approached Mr. Tarleton, who testified, so far as we think necessary to state, that he was an abstracter and had been for many years; that he knew John T. Williams and remembered the Daniels and Williams transaction; that he was the attorney for the National Loan & Investment Company here and passed on titles for them, representing the borrower; that the company took his opinion on titles; that he examined the title to this land for Mr. Williams or Mr. Daniels; and that in the matter of closing this loan, the money was sent to him for distribution. He further testified that there were outstanding liens amounting to some $2,000 which liens he had discharged out of the $3,500 check sent to him by the company, and that: ·

"The check shown me for $1,610.50 represents the amount I gave Mr. Williams after paying off these liens and claims that I have testified about. I think the tax money came out of that, or I had advanced that to pay the taxes in closing the deal. With the amount that I gave him in that check and the amount of the liens outstanding against the property, it represents the amount that I got from the company. * * * In the settlement, I accounted for the $3,500."

On cross-examination he testified:

"I examined the title for the borrower, but I directed the opinion to the loan company. The borrower pays the fees. I first gave a copy of the opinion to the borrower and told him what we needed to clear up the title for the loan. In all the transactions I had in connection with this matter, I dealt with John T. Williams; I don't recollect calling Mrs. Williams to the phone and talking to her about this matter; I don't recall saying anything at all to her about it. The abstract showed the title to the property to be in Daniels, but when I first took the matter up, the property stood in the name of Mrs. Ida Williams. I think I had in my possession at that time a deed from Mr. and Mrs. Williams to Daniels. We were buying the note from Mr. Williams. I examined the deed from the Williams to Daniels. After I had paid up all the taxes and other liens, I gave the balance of the money to John T. Williams. The note was payable to John T. Williams. * * *

"I did not know that this was a simulated transaction for the purpose of borrowing money; all the indications pointed to the fact that the title was regular; I had it certified to by the abstract company. All of my transactions were with Mr. Williams in connection with this matter.

"I never talked with Mr. Daniels to see whether he had bought the property, but the deed was acknowledged showing that he had bought it. I did not know Mr. Daniels, but I was buying the note that he executed to Mr. Williams. We were buying the note from the man who owned it. Mr. Daniels was the maker of the note which was for $3,500. I had a mortgage in my possession that Mr. Daniels had signed up to the National Loan & Investment Company. That is one of the instruments that has been introduced in evidence here.

"I cannot state whether the transaction with reference to clearing up the title was before or after the deed was executed from Williams to Daniels; the abstract was brought in for examination, and in the course of the examination the deed was disclosed to me, showing that the property had been sold to Mr. Daniels and the note we were buying was secured by a lien retained in the deed. I cannot say when I first saw the deed. The $3,500 note payable to Williams showed it to be a part of the consideration for the property, and it was signed by Daniels. It did not excite my curiosity to see that Mr. Williams was taking a part of the money and paying off the liens on property that Daniels owned; I did not think there was anything suspicious about that.

"The note belonged to Williams and Daniels owned the property, but the transaction had not been formally closed; it was closed with the understanding that these liens would be paid off out of this money, making the $3,500 lien a first lien against the property. I had the Daniels deed before me at the time I examined the title. The note from Daniels to Williams had not been turned over to me when I first started in on the transaction. I don't think I had seen the note then; I was to take the note up finally when the papers were all turned over to me. The fact that Mr. Williams sold his $3,500 note to me and then took $2,000 of the money, the proceeds from the sale of the $3,500 note, and paid off liens on the property which belonged to Mr. Daniels did not arouse my suspicions or my curiosity, for the reason that it was agreed before we bought the $3,500 note that these debts were to be paid off out of this money. I did not know anything about Daniels in this matter. All the information I had about the transaction came from Mr. Williams. I had no occasion to talk to Mrs. Williams, and I had no occasion to talk to Mr. Daniels."

On redirect examination, he testified, in part:

·"Williams told me that this loan was procured primarily for the purpose of saving his property from foreclosure under liens and taxes. It came up in the conversation that he was selling it to keep it from being sold under these liens."

On recross-examination, he said:

"I did not know that this was the Williams homestead; I did not know where they were living at that time." ·

Mr. J. L. Penry, the general agent for the appellant National Loan & Investment Company, also testified. We think it unnecessary to set out his testimony in full. It will be sufficient to say that he talked with Mr. Williams about the loan; that he knew nothing of the fact that Daniels was a nephew of Williams; that he visited the premises one time during the negotiations and found the blinds down and supposed the house to be vacant; that he had never heard anything that would cause him to believe that the sale of Daniels was a simulated transaction.

[2] As seen, or as will be seen by a review of the testimony, M. A. Daniels testified that Williams and wife had lived at the same place for many years; the evidence of Mr. Penry shows that some time after the loan was completed his son visited the place and found Mrs. Williams sick in the house, and there seems to be no evidence before us that shows as a matter of fact that the premises in controversy was not the homestead of Williams and wife at the time the appellee company acquired the note in question. We shall therefore assume that the issue of whether or not the property in question was the homestead of Williams and wife at the time of appellee's acquisition of the note is to be treated as established, or at least that the evidence relating to this issue was sufficient to take the issue to the jury. So treating the issue of the homestead vel non, the general rule is that where a grantor by deed absolute in form, but in fact a mortgage, conveys a homestead, which is in fact in the grantor's actual possession at the time of a subsequent conveyance by his grantee, or a subsequent grantee in the chain of title, the purchaser under the subsequent conveyance must take notice of the title under which the one in possession is holding. See Mason v. Olds (Tex. Civ. App.) 198 S. W. 1040, writ refused, and cases therein cited.

In Eylar v. Eylar, 60 Tex. 315, our Supreme Court, in an opinion by Associate Justice Stayton, ingrafted an exception to the general rule stated. It was there held that a purchaser from a vendee whose vendor remains in possession is not bound to inquire further as to the title, when he finds on record in the county a deed from such vendor conveying title, properly proved up and registered. This rule· was evidently predicated upon the theory that the registration records were the primary source of inquiry, and that where the vendee looked to the record and there found a declaration on the part of the grantor, that the grantee was the absolute owner of the subject-matter of the conveyance, no further inquiry was required. The

case of Eylar v. Eylar has been followed a number of times since.

In the case of Moore v. Chamberlain, 109 Tex. 64, 195 S. W. 1135, it was held that where tenants of a grantor were in possession, the general rule put the purchaser upon inquiry, and we have found no case which is in conflict with the case. In that case, however, the deed of the grantors was of record. See Chamberlain v. Trammell, 61 Tex. Civ. App. 650, 131 S. W. 227. In the case of Bryant v. Grand Lodge Sons of Hermann, 152 S. W. 714, by the Texarkana Court of Civil Appeals, it was held that where an unrecorded deed from the grantor remaining in actual possession was exhibited by the grantee to a proposed purchaser, the purchaser was not required by the general rule to inquire further. A writ of error appears to have been refused in that case.

[3] In the case before us it must be observed that the deed from Williams to Daniels was not only unrecorded, but was found and exhibited to the appellant's agents by Williams himself, then in possession, and not by Daniels, the grantee. Indeed, we find nothing in the evidence of Daniels, the named grantee in the deed from Williams, which shows that he ever saw that deed or that in fact it was ever delivered to him, or to any other person for him. The evidence discloses no attempt, other than as possibly may be inferred from J. L. Penry's testimony, to see or interrogate Mrs. Williams as to whether she was claiming any interest in the property, and, if so, what interest. So that, under all the circumstances, we do not feel quite able to say that the evidence was of that undisputed character which authorized the court to take all material issues away from the jury. If the jury should find that the circumstances were such as to put appellee upon inquiry as to the true state of the title, then the question would only be whether the inquiry had been prosecuted with reasonable diligence, and, if so, whether it would have brought home to appellee notice of the circumstances as alleged in the plaintiffs' petition.

We conclude that the judgment below should be reversed and the cause remanded for another trial. In reversing the case, however, we deem it proper to say that the evidence shows that in the purchase of the note given by Daniels to Williams, the appellant company paid off and discharged mechanics' and other liens of several thousand dollars which rested upon the premises in controversy, and we do not wish to intimate in what we have said that appellant in any event is precluded from its right, if any, to be subrogated to the title and interest of the owners and holders of such liens so discharged by appellant. See Sanger Bros. v. Ely & Walker Dry Goods Co. (Tex. Civ. App.) 207 S. W. 348.

Judgment reversed and cause remanded.