## TEXAS VEGETABLE UNION v. OBETS.
### (No. 7955.)

Court of Civil Appeals of Texas. San Antonio. March 14, 1928.

Rehearing Denied April 18, 1928.

1. **Master and servant** ☞6—In action for damages growing out of alleged breach of contract of employment, plaintiff held to have burden of showing he was employed.

In action growing out of alleged breach of contract to operate farm and manage same and for rental on machinery, plaintiff had burden of showing he was employed by defendant.

2. **Master and servant** ☞6—In action for alleged breach of contract of employment, fact that issue of employment was raised by pleading and so found by jury held not controlling, in absence of sufficient supporting evidence.

In action for damages growing out of alleged breach of contract of employment, fact that issue of employment was raised by pleading and so found by jury had no controlling effect, in absence of sufficient material evidence to support it.

3. **Master and servant** ☞6—Evidence held to preponderate against verdict for plaintiff in his action for alleged breach of contract of employment.

In action growing out of alleged breach of contract of employment to operate farm, where verdict was for plaintiff, evidence held to preponderate against verdict.

4. **Appeal and error** ☞1003—Appellate court cannot permit verdict to stand which is against overwhelming preponderance of testimony.

Where testimony overwhelmingly preponderates against finding of jury and there is little, if any material testimony to contrary, appellate court cannot permit verdict to stand.

### On Motion for Rehearing.

5. **Appeal and error** ☞1001(1)—Verdict should stand if there is material testimony to support jury's finding, but if not it must be set aside.

Verdict based on special findings should stand if there is any material testimony to support finding, but if not it must be set aside.

6. **Trial** ☞142—Inference does not justify verdict where there is not enough testimony upon which to predicate inference.

Law does not justify verdict on mere inference where there is not enough testimony upon which to predicate such inference.

7. **Corporations** ☞432(12)—Jury's finding that member of partnership, in employing plaintiff to operate farm, acted as agent of defendant corporation held not supported by evidence.

In action on alleged contract of employment to operate farm, finding that member of partnership, in employing plaintiff, acted for defendant corporation as its agent held not supported by evidence.

Appeal from District Court, Zavala County; L. J. Brucks, Judge.

Action by Chas. A. Obets against the Texas Vegetable Union. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

G. B. Fenley, of Uvalde, and Geo. C. Herman, of Batesville, for appellant.

David E. Hume, of Eagle Pass, and Jackson & Crawford, of Crystal City, for appellee.

COBBS, J. Appellee sued appellant for damages growing out of an alleged breach of contract of employment.

It is alleged that appellant was operating a farm in Zavala county and employed appellee, on August 4, 1924, to manage the same for 1 year, for the sum of $1,800 per year, payable monthly, and hired from him machinery, agricultural implements, and teams, and agreed to pay for their use $600 per annum, payable $50 per month. Appellee was paid for the first year and was again employed for another year upon the same terms. It is alleged he was discharged from the services on February 4, 1926, without cause or fault on his part, 6 months before the employment would have ended.

On the trial of the case appellee relied upon the last items set forth in his petition, as follows: "For hire of teams, machinery, and appliances August 15, 1925, to August 15, 1926, $600; for services of plaintiff under contract of August 15, 1925, from February 15, 1926, to August 15, 1926, at $150 per month, $900"—claiming that the appellant had paid him for the first 6 months' service of the second year, but had paid him nothing for the use of his teams, implements, etc.

The appellee answered by general denial and special answer, which, as far as is pertinent to this statement, is as follows: 

"And for special answer herein, if required, the defendant says that it never employed the plaintiff or his teams or machinery and agricultural implements as alleged by him * * * and that it is not indebted to him in any amount whatever."

The case was submitted to a jury on special issues, and, those issues being determined

favorably to appellee, the court rendered judgment in favor of the appellee against appellant, for hire of teams, machinery, and appliances from August 15, 1925, to February 4, 1926, $281.74, and for services from February 4, 1926, to August 14, 1926, $900.

The question of hire for the teams and machinery was not submitted to the jury, although it was a sharply contested point and there was evidence on both sides clearly raising the issue as to whether or not the appellant was liable for their hire, the appellant contending that the court erred in rendering judgment for the said hire, on an issue of fact, not submitted to the jury.

The issue presents the contention that the Texas Vegetable Union was operating the farm through J. J. Albers, its agent. The contention of appellant was that it was not operating the farm at all and that J. J. Albers was not acting for it at all, but the farm was at all times operated by Flory & Albers, a copartnership firm composed of Joe Flory and J. J. Albers, acting through its general manager, J. J. Albers, which firm had no connection with the Texas Vegetable Union, except that the members were holders of stock therein and officers.

Passing out of sight a discussion of all the propositions of law and assignments urged, we reach the real issue in this case. The verdict of the jury is against the great preponderance of the evidence. The potent facts show that the firm of Flory & Albers was farming the land for their joint use, hiring the labor and paying for it.

[1, 2] There is no material and satisfactory evidence that appellant was operating the farm at all and employing and paying for labor. The burden of proof was upon appellee to show that he was employed by appellant, and he has not discharged that burden, and the fact that the issue was raised by the pleading and so found by the jury has no controlling effect in the absence of sufficient material evidence to support it. We find nothing in the statement of Albers, who happened also to be the manager of the firm of Flory & Albers, that he was acting for and employing appellee for appellant. While the two positions were coincident, his alleged statements were directly against appellee's contention. Both Flory and Albers stated positively, and it was supported by other testimony, that they were operating the farm for their own benefit, employing labor and paying for it in their own interest, and not for appellant.

[3, 4] When the testimony so overwhelmingly preponderates against the finding of the jury and there is so little, if any, material testimony to the contrary, we cannot permit the verdict to stand.

The judgment of the trial court is reversed and the cause is remanded for another trial.

## On Motion for Rehearing.

[5] Appellee is very insistent that this court is not accepting the jury's finding on the special issue submitted, that "J. J. Albers in making the contract of employment of August 15, 1925, that is to say for the second year, with the plaintiff, C. A. Obets, acted for the defendant, the Texas Vegetable Union, or for the partnership of Flory & Albers." The jury answered the question for "Texas Vegetable Union." If there is any material testimony to support their finding the verdict should stand, but, if not, it must be set aside. Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059.

[6] The first question to determine was the authority of J. J. Albers to act as the agent of appellant to employ appellee. There is no testimony pointed out to us to prove the agency and authority claimed by appellee that Albers had or really assumed the authority to employ him, and such fact cannot be reasonably inferred from the circumstances proved in this case. The law does not justify a verdict on a mere inference where there is not enough testimony upon which to predicate such inference of agency. An agency must be shown first by testimony based upon the fact proved.

On a question similar to this our Supreme Court in Joske v. Irvine, supra, took some pains to clarify the question of scintilla of proof. The opinion was written by that able and painstaking justice, the late Leroy Denman, in which among other things he said:

" ' 'Since the scintilla doctrine has been exploded, both in England and in this country, the preliminary question of law for the court is, not whether there is literally no evidence, or a mere scintilla, but whether there is any that ought reasonably to satisfy the jury that the fact sought to be proved is established. If there is evidence from which the jury can properly find the question for the party on whom the burden of proof rests, it should be submitted; if not, it should be withdrawn from the jury.'

"In Baulec v. Railroad Co., 59 N. Y. 356 [17 Am. Rep. 325] the court said, quoting from Toomey v. Railway Co. 3 C. B. (N. S.) 149, that 'it is not enough to authorize the submission of a question, as one of fact, to a jury, that there is "some evidence." '   *   *   *

"This court in Lee v. Railway Co., 89 Tex. 588, 36 S. W. 65, said: 'To authorize the court to take the question from the jury, the evidence must be of such a character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it.' In Mynning v. Railroad Co., 64 Mich. 93, 31 N. W. 147 [8 Am. St. Rep. 804], the rule is stated thus: 'If the circumstances are such that reasonable minds might draw different conclusions respecting the plaintiff's fault, he is entitled to go to the jury upon the facts. The judge takes the case from the jury only when it is susceptible of but one just opinion.' The Supreme Court of the United States have approved the rule announced in Ryder v. Wombwell [L. R. 4 Exch.

32], supra. [Schuylkill & D. Improv. &] Railway Co. v. Munson, 14 Wall. 442 [20 L. Ed. 867]; Commissioners [Marion County] v. Clark, 94 U. S. 278 [24 L. Ed. 59]; Griggs v. Houston, 104 U. S. 553 [26 L. Ed. 840].

"From a careful examination of the cases, it appears (1) that it is the duty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established, such testimony, in legal contemplation, falling short of being 'any evidence'; and (2) that it is the duty of the court to determine whether the testimony has more than that degree of probative force. If it so determines, the law presumes that the jury could not 'reasonably infer the existence of the alleged fact,' and 'that there is no room for ordinary minds to differ as to the conclusion to be drawn from it.' The broad and wise policy of the law, formed in and descending to us through the crucibles of time, does not permit the citizen to be deprived of his property, his liberty, or his life upon mere surmise or suspicion, and places upon a trained judiciary the grave responsibility of determining as a question of law whether the testimony establishes more. * * *.

"'An inference is a deduction which the reason of the jury makes from the facts proved.' 1 Rice, Ev. § 36. If the jury cannot reasonably make the deduction, the law does not authorize it. Upon the whole case, we are of opinion that the probative force of the testimony does not go beyond the point of creating a mere surmise."

Taking this case for authority on the point, we have looked in vain here for any probative testimony to support the agency and authority of Albers to make the employment, or whether it in fact was done. Appellee has not pointed it out in his motion or elsewhere. Appellee does not page his brief, but makes the contention that:

"Flory, Byrd, Albers, and Anderson, all either members of the partnership, directors in the corporation, or employees thereof, stated that J. J. Albers was president and general manager of the Texas Vegetable Union. He gave requisitions under its name for supplies. He contracted and paid bills for it. In the pleading introduced in evidence it was stated that defendant [Texas Vegetable Union] had employed Obets by the month, and not by the year. Obets testified that the contract sued upon was made between him and Albers, representing the Texas Vegetable Union, in a field in Zavala county. Who is better able to state the terms and conditions of said contract than the parties who made it—Obets and Albers, the latter either acting for Flory & Albers or for the Texas Vegetable Union? Which of them told the truth? The law has prescribed the test. It is the finding of the jury. The jury found that Albers was acting for the Texas Vegetable Union when the contract of August 15, 1925, was made. We must either accept their conclusion upon that issue or set aside their finding upon conflicting testimony which was before them."

Appellee contends it was the duty of the court to show in what particular the proof has failed, and that:

"If the court would indicate in what particular the proof has failed, then appellee could upon another trial adduce the proof."

That may be true, and in remanding this case we are giving appellee that chance, which he would not have were we to render the judgment.

Now, we do not like to discuss or comment on evidence when a case is largely reversed on the want of evidence. But here almost the entire testimony tends strongly to show that appellee was employed for Flory & Albers, and not for appellant at all, and was paid for his services by Flory & Albers. Mr. Albers, who, it is claimed, was the agent of appellee and employed him for appellant, testified:

"My name is J. J. Albers, I live in San Antonio. I am a member of the firm of Flory & Albers, I have been in business with Mr. Flory about 18 years.

"We have had business in Zavala county. We have about 1,040 acres of land in Zavala county, located on the Byrd ranch, about 4 miles from Crystal City. Flory & Albers operated the farm, furnished all of the money.

"I have heard the testimony here about the employment of Mr. Obets on the farm in August, 1924. In August, 1924, Flory & Albers were handling and operating that farm. There were about 200 acres in cultivation on the farm at that time. Mr. Byrd handled it up to that time. We were just getting ready to install machinery, I think, at that time.

"Flory & Albers were furnishing all the money for the operation of this farm at that time, in August, 1924. Flory & Albers afterwards had more land put in cultivation on this farm. Flory & Albers paid for the grubbing of the land. Flory & Albers had machinery installed on that farm, there was a 25 horse power Fairbanks engine put in and a lot of pipe and tanks. Flory & Albers paid for that. Flory & Albers continued to operate that farm until we sold out about the last of July, a year ago, 1926.

"I believe it was around July or August, 1924, when Mr. Obets first began to work on the farm. Mr. Obets came to see Mr. Flory and myself with reference to working on that farm. He came to my office in San Antonio. He was employed. Flory & Albers employed him. Flory & Albers paid him.

"When Mr. Obets came to see us in San Antonio in the summer of 1924, he said that Mr. Byrd wanted him to see us about working on our place; he couldn't make any agreement with Mr. Byrd so he sent him up to see us. After lots of preliminary talk, we finally came to an agreement to pay him $150 a month. So far as tools, there was nothing said about tools, no agreement reached about tools, but it was left entirely to us as to what they would be worth to us in the making of the crop. We hadn't seen the team at that time and didn't know anything about the condition of the tools, otherwise we would not have considered that at all. We bought ten mules and a lot of farm machinery to operate the place. Mr. Obets was up there, and he helped us pick out the mules, and we sent them to Crystal City on this farm. Flory & Albers paid for the mules, and they belonged to Flory & Albers. Flory & Albers also bought

farm implements, and it belonged to Flory & Albers.

"We told Mr. Obets we would pay him $150 a month, but we didn't know about the tools and teams, and we couldn't reach any agreement on them; we left that open, and he agreed to leave it to us as to how much they would be worth after making the crop.

"Mr. Obets was employed until February, 1926. There was no contract. He was employed by the month. There was nothing said about the Texas Vegetable Union; that was not known to but very few people.

"As to the allegation of plaintiff that on or about August 15, 1925, the Texas Vegetable Union offered to re-engage him to perform the same duties that he had been performing, I re-engaged him by the month, I did so for Flory & Albers. I was not acting for the Texas Vegetable Union. I knew when I employed him that Flory & Albers would have to pay him. He worked for Flory & Albers up to the time that he was discharged, February 4, 1926. I discharged him. I was acting for Flory & Albers when I discharged him.

"Flory & Albers employed Mr. Obets and paid him. He received his instructions from Flory & Albers. In my relations with Obets, I was not acting as an officer nor agent of the Texas Vegetable Union. The Texas Vegetable Union had nothing. Mr. Obets knew that Flory & Albers were running that farm because he addressed us several letters to Flory & Albers, before the filing of this suit.

"I testified to that effect here 6 months ago in the trial of another case. I claimed then in open court that Flory & Albers employed Obets. Since that time he filed this suit against the Texas Vegetable Union."

This testimony is supported by the testimony of E. R. Byrd, Joe Flory, and P. J. Anderson, all of whom were so situated as to know the facts. This evidence is uncontradicted except by appellee, who testified:

"When I went to San Antonio, I was asked what kind of a contract I had made, and I told him that I had been employed by Mr. Byrd to go to work at $1,800 a year, to be paid to me monthly at the rate of $150 per month. * * * I had an outfit that was involved in our transaction, and I was asked to enumerate what that consisted of. The outfit was valued at $1,200, and they had an option to buy at $1,200. They accepted the proposition on the basis of $50 for the use of the outfit and $150 per month that I drew monthly, and the price paid for the outfit I was to collect at the end of 12 months.

"As to whether that contract was renewed or extended, it was about the 15th day of August, 1925, that was made with J. J. Albers. I was to go back in their employment at the rate of $1,800 per year, in the employment of J. J. Albers, the Texas Vegetable Union. The new contract was made the 15th day of August, 1925; that was to last 12 months. Under the terms of that, I was to draw $1,800 per year, and the same rate for machinery and teams and an additional per cent. of all crops sold."

[7] We reiterate that this is not sufficient material evidence to support the claim of agency and authority that appellee was being employed by an agent of appellant to perform services for it. All the evidence tends to show that his employment was for and in behalf of Flory & Albers, who were operating the farm for and in their own behalf and paying all the expenses and salary of appellee.

We hesitate very much to comment on the facts, since it is our duty to reverse and remand the judgment for another trial, but in view of the fact that the court submitted the issue of agency to the jury and it found against appellant, we think the ends of justice will be met by remanding the case for another trial. Therefore the motion for rehearing is overruled.