### Chicago, Rock Island & Pacific Railway Company v. S. A. Reames.

#### Decided November 17, 1910.

**1.—Charge—Negligence—Proximate Cause.**

It is not necessary that a charge which requires that the negligence shown, to be actionable, must have caused the injury, should also use the word "proximate" with respect to the causal connection, where no other intervening agency was shown unless it were plaintiff's contributory negligence, and that issue was properly submitted.

**2.—Contributory Negligence.**

Evidence in case of a person struck by a freight car moving on the main track of a railway, he walking too close to same while going to the depot to meet a passenger train then approaching on the same track, considered and held not to show contributory negligence as matter of law, his assumption that such track would be kept clear for the passenger train at that time being natural. Missouri, K. & T. Ry. Co. v. Wall, 102 Texas, 362, and Texas Mid. R. Co. v. Byrd, 102 Texas, 263, distinguished.

**3.—Damages.**

Verdict of $4000 damages for personal injuries stated, sustained as not excessive.

Appeal from District Court of Montague County. Tried below before Hon. Clem. B. Potter.

*N. H. Lassiter, Robert Harrison,* and *Speer & Weldon,* for appellant.— The charge should have instructed the jury that the negligence set forth therein must have been the *proximate* cause of the accident. Railway Co. v. Scrivener, 49 S. W., 649; Railway Co. v. Hunt, 47 S. W., 70.

The evidence shows that the plaintiff was guilty of contributory negligence in that he voluntarily chose a dangerous place to walk upon the defendant's right of way, when there was a convenient and entirely safe pathway available to him. Railway Co. v. Wylie, 118 S. W., 1127; Railway Co. v. Wall, 116 S. W., 1141, 102 Texas, 362; Railway Co. v. Byrd, 115 S. W., 1165, 102 Texas, 263; Railway Co. v. Edwards, 100 Texas, 22; Railway Co. v. Briscoe, 109 S. W., 455; Railway Co. v. Kauffman, 46 Texas Civ. App., 72; Railway Co. v. Wyatt, 35 Texas Civ. App., 109; Railway Co. v. De Ollos, 76 S. W., 225; Railway Co. v. Branom, 73 S. W., 1065; Railway Co. v. Haas, 48 S. W., 540, 19 Texas Civ. App., 645; Turner v. Railway Co., 30 S. W., 254; Sanchez v. Railway Co., 30 S. W., 431, 88 Texas, 117; Railway Co. v. Ryan, 80 Texas, 61; Railway Co. v. Kutac, 72 Texas, 651; Railway Co. v. Moss, 4 Texas Civ.

App., 320; Railway Co. v. Fuller, 5 Texas Civ. App., 660; Railway Co. v. Hughes, 67 Texas, 595; Hoover v. Railway Co., 61 Texas, 503; Railway Co. v. Dean, 76 Texas, 73; Kentley v. Railway Co., 65 Fed., 391; Wilds v. Railway Co., 24 N. Y., 430; Railway Co. v. Houston, 95 U. S., 702.

*J. H. Wood,* for appellee.—On charge upon causal connection: Sickles v. Railway Co., 13 Texas Civ. App., 434; Railway Co. v. Purdy, 98 Texas, 557; Railway Co. v. Gist, 31 Texas Civ. App., 662; Railway Co. v. Lehmberg, 75 Texas, 66; Railway Co. v. Waldo, 32 S. W., 784; Railway Co. v. Boyce, 87 S. W., 399.

HODGES, ASSOCIATE JUSTICE.—The judgment from which this appeal is prosecuted is based upon an action for damages resulting from personal injuries received by the appellee through the alleged negligence of appellant's agents in operating a train. The evidence shows that, about the 8th of December, 1905, the appellee was struck by one of the appellant's box cars then being pushed along its main line track at Colgate, Oklahoma. The railway track at that point ran east and west. The depot and a water tank were situated near each other and on the south side of the main line. The water tank was a short distance east of the depot. Near this tank, and still farther east, was a public road, running north and south, crossing the track. There was also a switch track branching off from the main line at a point west of the depot, extending east and connecting again with the main line some distance from the road crossing. This latter seems to have been used also as a passing track. The appellee resided a few miles in the country, and had, on that occasion, gone to the appellant's depot to meet his daughter, who was expected to arrive on an eastbound passenger train. About the time, or just before, the passenger train was due a local freight train coming from the west pulled into the depot and stopped at the tank for the purpose of taking water. The fireman on the local freight train was a son-in-law of the appellee. After the train had taken water appellee and his son-in-law became engaged in a conversation near where the train was standing. After taking water the train moved on east and backed in on the switch track. The appellee and the fireman walked along east till they reached a point near the east end of the switch. Appellee then, according to his testimony, heard the passenger train approaching, turned back, and went west toward the depot for the purpose of meeting his daughter. At that time, he says, the freight train was standing on the sidetrack. He also testified that he walked along a well beaten path commonly used by people on the south side of the main line track, near the end of the ties; that after having gone some distance, and just as he reached the road crossing, he heard a grinding sound behind him, looked around, and discovered the box car, but too late to get out of the way. He was struck by a corner of the car, knocked down, and injured in the manner alleged in his petition.

The testimony shows that after the freight train was placed on the side-track one of the brakemen belonging to the crew desired to set out a car so that they would be ready to start immediately after the departure of the passenger train; that for this purpose the car was uncoupled from the train and by the engine pulled east to the connection with the main line, and was being pushed west when it collided with the appellee in the manner above referred to. There was testimony tending to show that the car at the time was moving at rather a rapid rate, and that no bell was rung or whistle blown to give warning of its approach. It is not contended on this appeal that the testimony does not show negligence on the part of the train operatives in producing the collision.

The first three assignments of error complain of the failure of the court to instruct the jury that the negligence set forth in three different paragraphs of the charge must have been the proximate cause of the injuries. In the paragraphs referred to the court used the following language: "And if you further believe that the negligence of the defendant, if any, was the cause of the plaintiff being struck, then you will find for the plaintiff, unless you find for the defendant under other sections of this charge." . . . "And that such negligence, if any, caused the plaintiff to be struck, then you will find for the plaintiff, unless you find for the defendant under other sections of this charge." . . . "And that on account of such negligence the plaintiff was struck by said car and injured, then you will find for the plaintiff, unless you find for the defendant under other sections of this charge."

While it is true that actionable negligence must be the proximate cause of the damage for which compensation is sought, yet it is not always essential to a correct charge that the word "proximate" should be used. It is enough if the instructions convey the idea with sufficient clearness to impress upon the minds of the jurors the fact that the negligence complained of was the responsible cause of the injury. Under the facts of this case the only agency which could have supervened to remove the proximity of the negligent conduct referred to was the contributory negligence of the appellee. That issue was so clearly and fully submitted in other instructions that all danger of the jury disregarding it was eliminated. We do not think there was any error in the charges complained of. Sickles v. Missouri, K. & T. Ry. Co., 13 Texas Civ. App., 434, 35 S. W., 494; Missouri, K. & T. Ry. Co. v. Purdy, 98 Texas, 557, 83 S. W., 38; Texas & P. Ry. Co. v. Bigham, 90 Texas, 225; Missouri, K. & T. Ry. Co. v. Gist, 31 Texas Civ. App., 662, 73 S. W., 858.

The court properly refused the special charges requested on the issue of contributory negligence. Those portions of them which presented correct instructions upon that issue were fully covered by the charges given.

It is contended further that the verdict in this case is unsupported by the evidence. It is urgently insisted by appellant's counsel that the undisputed evidence was sufficient to show, as a matter of law, that the

appellee was guilty of contributory negligence in two respects; one in failing to look and listen for the approach of this train, and the other in walking where he did on the south side of the main line and so near the track as to be liable to be injured by a passing car when there was another and safe way equally as accessible and convenient. While a failure to look and listen for the approach of railway trains by one who is approaching their track is not to be regarded as contributory negligence *per se,* yet there are circumstances under which such failure should be treated by the courts as negligence as a matter of law. Those instances arise when the circumstances are of such a character that the court would be justified in assuming that no man of ordinary prudence would have neglected that precaution. The propriety of such an assumption by the court depends upon the facts of each particular case. In the one before us we do not think it can be said, under the circumstances, that a man of ordinary prudence would not have assumed, as Reames did, that the freight train had gone on the sidetrack to remain till after the arrival and departure of the passenger train, which was then approaching the station, and further, that the main track near which he was then walking would be kept clear till after the latter train had gone. Common observation of the usual management of railway trains under such circumstances might tend to make that impression upon a person of ordinary prudence. Reames thus describes the circumstances under which he was injured: After detailing the facts preceding and attending the arrival of the freight train, he says, referring to his son-in-law, the fireman: "After he got through putting water in the engine the train moved up east and went in on the sidetrack—backed in. My judgment would be that the road ran mighty near east and west along there. The sidetrack that the train backed in on was on the north side of the main line. The local train pulled east. . . . After going a certain distance to the head of the switch it backed in on the sidetrack north of the main line. My son-in-law and I walked up the track quite a little piece, I don't know how far. We were walking along talking. I wasn't paying attention to the distance. I can't say exactly just how far we went. . . . What ended the conversation was that I heard the passenger train coming. I heard it whistle, and I looked to the west and saw the smoke. That was the train on which I excepted my daughter. Then I said, 'Harry, the passenger is coming, and I have got to go to be there to meet Willie.' I shook hands with him, bade him goodbye, and started down the main line by the end of the ties where there was a good trailway to walk on. . . . I walked right along by the end of the ties. There was a good trailway along at the end of the ties. I walked on the south side of the main track at the end of the ties. I don't know exactly how far I walked that way; I walked a right smart piece. There was a road crossing and a water tank there, and I recollect of being right near the water tank and seeing it, and I saw this road crossing, and the first thing I knew I heard the grinding of wheels right behind me. My face was to the west, and

I turned around, and as I turned around this box car struck me here and knocked me, I don't know how far. It knocked me off down to a hole there that had been dug out to fill up this crossing there. . . . There is a wagon road crossing that is east of the water tank, that crosses the railroad track there, and I was just on it. I must have been on that road crossing when I was hit by the car, because I recollect of rolling down that hill there. I was right on the edge of it, I think; I must have been. I can't tell whether I was in the center of it or not. I know I was on the road crossing, but I can not tell just what part of it. . . . When I left Harry I started immediately down the south side of the track, and walked that way the whole distance. When I left Harry Rosenthal that freight train was standing on the side-track; my best recollection is that it was standing still on the side-track. . . . There was no whistle blown, or bell rung—nothing of the kind at any time prior to the time it struck me. I had no notice of any other kind of the backing up of the locomotive and cars; none at all. The first notice I had of it was when I heard the grind of it right behind me." On cross-examination he said: "When I noticed the freight train on the siding the engine and all was on the siding. I supposed the main line was clear east. The last time I looked back it was standing there. When I looked down there there was nothing on the main line. The freight train had backed off of it and was on the siding. I had not noticed those cars jostling or moving while I was there talking to Harry. I supposed when the freight train went in on that siding that it would stay there when the passenger was due. The freight trains I had seen stayed on the sidings until the passenger got in. . . . It has been my observation that when it goes in on the siding it will stay there until the passenger comes when it is due." Again, in referring to the freight train, he said: "I didn't pay any attention to that train. I had not observed trains much. As to what I based my judgment on that she would stick to that siding, it was just like all freight trains. They didn't maintain any switch engine around there; this freight train was the local. It wasn't my observation that the local did a right smart of switching there, not before the passenger comes in. . . . I noticed they stayed on the siding until the passenger came by; that was the Katy I watched. I never was up there at the Rock Island a great deal. I always went there to meet my children. I didn't know very well what they did. I didn't know they would come out of a switch at all after they got the train on the siding, not until the passenger had passed." On further cross-examination he said: "I think there was a good walkway between the main line and this sidetrack. I walked along the south side of the rails, or ties rather. I walked close enough so that a passing train would strike me. If I had walked on this good pathway between the tracks I do not suppose it would have struck me. My best judgment is that if I had been walking in that good pathway between the trains I do not think a train would have struck me."

Vol. LXIII Civil-3.

Counsel for appellant insist that the plaintiff's evidence brings this case within the rule announced in Missouri, K. & T. Ry. Co. v. Wall, 102 Texas, 362, 116 S. W., 1141, and Texas Mid. R. Co. v. Byrd, 102 Texas, 263, 115 S. W., 1165, and other cases holding similar views. We think, however, that the facts here are in some important respects distinguishable from those in the cases referred to. There the court held that it was contributory negligence for one passing along a railway right of way to use a dangerous pathway when there was another safe way equally as convenient and accessible. In other words, the choosing of the dangerous pathway in preference to one which was safe, when the opportunities for use were equal, constituted contributory negligence as a matter of law. What appears to have been the primary consideration which moved the court in the above cases to hold the injured party guilty of contributory negligence was the fact that he was walking along a way known to him to be at the time a dangerous place. This known danger arose from the known fact that passing trains might be expected at any time to move that way. In the case before us the situation of Reames was different. He testified that the passenger train was approaching, that the local had taken the siding, as he thought, to remain there till the departure of the passenger train. Under those circumstances we think the jury might have concluded that a man of ordinary prudence would have looked upon the path traveled by Reames as being safe for the time being, basing his conclusion upon the inference that the track would be kept clear for the passenger train. If Reames had a right to assume that the track would be kept clear, and that the freight train would remain standing upon the sidetrack until after the departure of the passenger train, that situation would also tend to excuse him for a failure to look and listen for the approach of a train from behind.

There is still another feature of this case which we think distinguishes it from those upon which the appellant relies. The testimony shows that the place where Reames was injured was at a road crossing. This might have been a crossing of such a public character that a person walking upon it would not necessarily be considered guilty of contributory negligence. Hence, it is immaterial whether Reames had chosen to walk between the two tracks in what is termed a "safe place," or upon some other part of the railway right of way, if at the time he was struck he was on the road crossing, at a place where travelers had a right to be. His situation would not be different had he followed the safe path till it reached the road, and then turned with the road to where he was struck.

There are other assignments, which complain of the verdict as being excessive. These, we think, are without merit. The evidence shows that Reames at the time of his injury was about 65 years of age, a man at least of ordinary strength and health; that he was a farmer, and to some extent relied upon his own services in the conduct of his business. He testified that his services were worth from $2.00 to $2.50 per day

in superintending his farm. He was confined to his room about eight weeks before he was able to get out. According to the evidence, many of his injuries remain uncured. The testimony of some of the witnesses would justify the conclusion that he still suffers from some that are serious and permanent, including the loss of his hearing in one ear, and the destruction of one lung. There is also testimony tending to show that some of the injuries may result in shortening his life. We think the verdict of $4000 was not excessive.

The judgment of the District Court is affirmed.

*Affirmed.*

Writ of error refused.