## TEXAS & N. O. R. CO. v. LEACH et al.
### No. 9710.

Court of Civil Appeals of Texas. Galveston.
April 13, 1932.

On Rehearing May 2, 1932.

Baker, Botts, Andrews & Wharton, John P. Bullington, Palmer Hutcheson, and S. H. German, all of Houston, for appellant.

King, Wood & Morrow, of Houston, for appellees.

LANE, J.

On the 25th day of April, 1929, D. W. Leach, Jr., was an employee of the Bryant-Hudson Essex Company, a "subscriber" as that term is used in the Workmen's Compensation Statute of Texas (Vernon's Ann. Civ. St. art. 8306 et seq.), which said company on said date held a policy of insurance issued by the Century Indemnity Company.

On the day and date above mentioned D. W. Leach, Jr., was struck and killed by a train of the Texas & New Orleans Railroad Company, hereinafter referred to as the railway company, at a point where Thompson street in the city of Houston crosses the track of the railway company.

On April 11, 1930, Mrs. Pearl Leach, widow of D. W. Leach, Jr., deceased, in behalf of herself and as next friend and mother of Charlotte Pearl Leach, a minor and a daughter of D. W. Leach, Jr., deceased, and the parents of D. W. Leach, Jr., brought this suit against the railway company and the Century Indemnity Company, hereinafter called indemnity company, to recover damages alleged to have been suffered by them by reason of the death of said D. W. Leach, Jr.

The only allegation of negligence on the part of the railway company made by the plaintiffs as a proximate cause of the death of D. W. Leach, Jr., presented for our consideration, is that the railway company was guilty of negligence in running and operating its train, which struck and killed the deceased, over a street and public crossing located in the corporate limits of the city of Houston at a rapid and dangerous rate of speed in excess of 18 miles per hour and in violation of the city ordinance of the City of Houston.

The appellant answered by general demurrer and general denial and a special plea of contributory negligence on the part of D. W. Leach in going upon the railroad track at the time he did, and in the manner he did, and without stopping to look and listen; and that at the time of the accident its train was being operated as an instrumentality of interstate commerce, and that the rules of law as announced by the decisions of the United States Supreme Court should govern in determining the question of contributory negligence.

Defendant indemnity company answered, admitting the truth of the allegations of the plaintiffs' petition, and filed cross-action against the railway company and alleged as follows:

"That at the time of the injuries to and death of the deceased, D. W. Leach, Jr., he was in the employ of the Bryant-Hudson Essex Company in the City of Houston, Harris County, Texas; that at said time said Company was eligible to become and was a subscriber under the terms of the Workmen's Compensation Act of the State of Texas, and carried a policy of compensation insurance with this defendant, protecting all of its employees, including the said D. W. Leach, Jr., under the terms of said act. That after the death of the said D. W. Leach, Jr., this defendant paid to his beneficiaries, to-wit, Pearl Leach and Charlotte Pearl Leach, plaintiffs in this cause, the sum of Fifty-Five Hundred ($5,500.00) Dollars, being the amount of compensation to which they were entitled under the Workmen's Compensation Act of the State of Texas, on account of the death of the said D. W. Leach, Jr.; that under the terms of said act this defendant is subrogated to the cause of action of the plaintiffs, Pearl Leach and Charlotte Pearl Leach, as against the defendant, Texas & New Orleans Railroad Company, and is entitled to have set aside to it out of any recovery had by the plaintiffs in this cause the amount of money so paid by it as compensation, together with a reasonable sum as its expense in collecting said amount.

"This defendant adopts and makes a part hereof all of the allegations in the plaintiffs' petition on file in this cause except the plaintiffs' allegation that it had refused to bring this action."

It prayed that, out of any recovery had by plaintiffs against the railway company, the sum of $5,500, plus a reasonable sum to be fixed by the court as its expenses for collecting the $5,500, be set aside to it.

The case was tried before a jury, to whom the court defined the terms "negligence" and "adequate cause," and submitted to them special issues Nos. 1 and 2, as follows:

No. 1. "Was the train in question being operated within the corporate limits of the City of Houston on the occasion in question in violation of the City Ordinance in evidence before you limiting the speed of locomotive engines to eighteen miles per hour while being operated within the city limits?"

No. 2. "Was such operation of the locomotive engine in violation of said ordinances a proximate cause, as that term has been herein defined, of deceased's injuries and resulting death?"

Both of such issues were answered in the affirmative. The answer to special issue No. 1 constitutes the only finding of negligence

on the part of the railway company. The jury found that D. W. Leach, Jr., was not guilty of contributory negligence, and that Mrs. Pearl Leach had suffered damages in the sum of $4,500 by reason of the death of D. W. Leach, Jr., her husband, and that Charlotte Pearl Leach, by reason of such death, had suffered damage in the sum of $10,000.

It was conceded by the plaintiffs that the indemnity company was entitled to have the sum of $5,500 set aside to it out of the recovery awarded to them as prayed for by said company.

Upon the verdict of the jury and the evidence, the court found that Mrs. Pearl Leach was entitled to a recovery for her own use the sum of $4,500 against the railway company, and to a recovery of the sum of $10,000 against the railway company as next friend of and for the use and benefit of the minor, Charlotte Pearl Leach.

It being conceded by plaintiffs that the indemnity company had paid to Mrs. Pearl Leach, for her own use, the sum of $2,750, under the terms of the policy of insurance issued by it to the employer of D. W. Leach, Jr., deceased, and that a like sum had been paid to her by said company as next friend of and for the use and benefit of the minor plaintiff, Charlotte Pearl Leach, the court rendered judgment for the indemnity company on its cross-action against the railway company for the sum of $5,500 to be paid out of the recoveries to which the plaintiffs Mrs. Pearl Leach and Charlotte Pearl Leach were entitled from the railway company.

After deducting said respective sums awarded to the indemnity company from the respective sums to which the plaintiffs, Mrs. Pearl Leach and Charlotte Pearl Leach, were entitled to recover, judgment was rendered for Mrs. Pearl Leach for her own use and benefit the sum of $1,750 against the railway company, and for her as the next friend of, and for the use and benefit of, the minor, Charlotte Pearl Leach, the sum of $7,250 against the railway company. Judgment was also rendered that the other plaintiffs, D. W. Leach, Sr., and Mrs. Baier, surviving parents of D. W. Leach, Jr., deceased, take nothing by this suit.

From the judgment rendered against it the railway company has appealed.

Appellant's first contention is in effect that the court erred in not instructing a verdict in its favor, in that the undisputed evidence shows that, at the time of the accident resulting in the death of D. W. Leach, Jr., appellant's train which struck the deceased was engaged in interstate commerce, and was an instrumentality of interstate commerce; that in such circumstances appellant had the right to have the rules of law declared by the federal courts applied to the facts of this case on the issue of contributory negligence; that

under such rules D. W. Leach, Jr., as shown by the evidence, was guilty of contributory negligence as a matter of law; and to allow a recovery in this suit against appellant would constitute an unreasonable burden on interstate commerce in contravention of the commerce clause of the Constitution of the United States.

We overrule appellant's contention that, applying the rules laid down by federal courts to the facts of this case on the issue of contributory negligence, the trial court should have held that D. W. Leach, Jr., was guilty of contributory negligence as a matter of law.

We are of opinion that the decisions of the federal courts and of the courts of this state are not different on the facts of this case relative to contributory negligence. Under both rules of decision the question as to whether the deceased, Leach, was, under the evidence in this case, guilty of contributory negligence, was a question for the determination of the jury under proper instructions.

In Grand Trunk R. Co. v. Ives, 144 U. S. 408, 12 S. Ct. 679, 36 L. Ed. 485, a case decided by the Supreme Court of the United States, it was held that, when a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, either on the part of the defendant or the plaintiff, constituting a proximate cause of an injury, the determination of the matter is for the jury. It was also held that, where a statute of a state makes provision in regard to flagmen at crossings, the federal courts will follow the construction given such statute by the courts of the state; and so follow the decisions of the courts of the state. It was also held that, in actions against a railroad company to recover for injuries caused by the negligence of its servants, the determination of the fact of whether the person injured was guilty of contributory negligence is a question of fact for the jury.

We have been unable to find any decision of any federal court holding to a view contrary to the holding in the case cited. It is thus shown that the decisions of federal courts and of the courts of this state are not different on the facts of the present case relative to the authority of the jury to determine the question as to whether such facts show contributory negligence on the part of the plaintiffs.

We agree with appellees in their statement that the case of Baltimore & O. R. Co. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645, relied upon by appellant, has nothing whatever to say about interstate commerce. It applies the old rule that, when the question is one of "general" law, the federal courts will use their own judgment as to what is the rule, regardless of what may have

been decided by the courts of the state in which the transaction in litigation arose. 25 Corpus Juris, pp. 846–849. Naturally the Supreme Court of the United States holds, as a necessary logical result of the same reasoning, that a state court is at liberty to decide a question of "general" law in the light of the state court's own reasoning powers, even though the decision may affect an interstate carrier, and even though the federal courts would have decided the question of "general" law the other way. Arkansas So. R. Co. v. German Nat. Bank, 207 U. S. 270, at page 275, 28 S. Ct. 78, 52 L. Ed. 201, at page 203, col. 2, page 204.

Under the decisions of the Texas courts, the question of whether or not Leach was guilty of contributory negligence was plainly one of fact, and that issue has been settled by the jury's verdict.

A recent decision of the Supreme Court of the United States in which they cite the Goodman Case shows clearly that such court holds that the state courts are in no manner bound by the decision of the Supreme Court of the United States in the Goodman Case. Herron v. Southern Pacific Co., 283 U. S. 91, at page 94, 51 S. Ct. 383, 75 L. Ed. 857.

The Supreme Court of the United States, in the case of Grand Trunk R. Co. v. Ives, 144 U. S. 408, 12 S. Ct. 679, 36 L. Ed. 485, said:

"It is earnestly insisted that, although the defendant may have been guilty of negligence in the management of its train which caused the accident, yet the evidence in the case given by the plaintiff's own witnesses, shows that the deceased himself was so negligent in the premises that but for such contributory negligence on his part the accident would not have happened; and it is, therefore, contended that the court below should, as matter of law, have so determined, and it not having done so, this court should so declare, and reverse its judgment. To this argument several answers might be given, but the main reason why it is unsound is this: As the question of negligence on the part of the defendant was one of fact for the jury to determine, under all the circumstances of the case, and under proper instructions from the court, so also the question of whether there was negligence in the deceased which was the proximate cause of the injury, was likewise a question of fact for the jury to determine, under like rules. The determination of what was such contributory negligence on the part of the deceased as would defeat this action, or perhaps, more accurately speaking, the question of whether the deceased, at the time of the fatal accident, was, under all the circumstances of the case, in the exercise of such due care and diligence as would be expected of a reasonably prudent and careful person, under similar circumstances, was no more a

question of law for the court than was the question of negligence on the part of the defendant. There is no more of an absolute standard of ordinary care and diligence in the one instance than in the other. This rule is sustained by the Michigan authorities (Mynning v. Detroit, L. & N. Ry. Co., 64 Mich. 93, [31 N. W. 147, 8 Am. St. Rep. 804]; Underhill v. Chicago & G. T. Ry. Co., 81 Mich. 43, [45 N. W. 508]; Baker v. Flint & P. M. Ry. Co., 68 Mich. 90, [35 N. W. 836]; Engel v. Smith, 82 Mich. 1, [46 N. W. 21, 21 Am. St. Rep. 549]); and its correctness is apparent from an examination and analysis of the generally accepted definitions of contributory negligence, as laid down by the courts and by text writers."

■ By its third, fourth, fifth, and sixth assignments of error, appellant insists that, if it be conceded, as found by the jury, that at the time the train that struck and killed D. W. Leach, Jr., was being operated within the city of Houston at a speed in excess of 18 miles per hour, in violation of an ordinance of said city, such act was negligence per se, still before appellees could recover it was incumbent on them to prove that such negligence was the proximate cause of the death of D. W. Leach, Jr., and that, as there was no evidence to show a causal connection between such negligence and the death of Leach, Jr., the finding of the jury that such negligence was a proximate cause of the death of D. W. Leach, Jr., was without evidence to support it; that such finding is so without substantial proof to support it as to raise the presumption that it was based only upon surmises and conjectures. Wherefore such findings should not be permitted to stand, and by its sixth assignment it insists that such finding is so against the great preponderance of the evidence as to be manifestly wrong.

To support the foregoing contentions, appellant further contends that, since the jury made no finding of the speed of the train other than that it exceeded a speed of 18 miles per hour in violation of the city ordinance, such finding was insufficient to support their further finding that such speed was a proximate cause of the death of D. W. Leach, Jr.; in other words, in the absence of a finding of the actual speed of the train, the presumption should be indulged that such speed was but a fraction of a mile more than 18 miles per hour, or only 18½ miles per hour, and that, if such presumption is indulged, the jury had no sufficient basis for its findings that the act of running the train at a speed in excess of 18 miles per hour in violation of the city ordinance was a proximate cause of the death of D. W. Leach, Jr.

We overrule appellant's contention. The engineer in charge of the engine which struck deceased testified that as near as he could tell he was running about 18 or 20 miles per hour just before the accident occurred; that he applied the air as soon as he saw the automobile of deceased. Mrs. Mary Acock testified that the train was certainly going fast; that her estimate of its speed was 40 miles per hour. James Dickson, a section foreman for the railway company, testified that the train ran 600 or 700 feet after it struck the automobile of the deceased.

Witness Bangs testified that he could not say that the train was running about 40 miles per hour, but that it was running at a good speed; that he had made a statement in which he had stated that the train was running at least 40 miles an hour, but he had since changed his estimate of such speed, and that he was unable to judge its speed.

G. W. Hall, a locomotive engineer of 20 years' experience, was asked, in the light of his experience as an engineer handling trains, to state what would be the rate of speed a train of ten Pullman cars, on straight, level track with the air equipment in good condition, brakes in good condition, and a service emergency application is made of the air for the purpose of stopping the train, which moves 700 feet after the emergency is applied. In answer to such question, the witness said: "About 45 miles an hour." He also testified that such train under the conditions stated ought to be stopped in 200 feet.

The undisputed evidence shows that the train that struck the deceased ran about 700 feet after it struck him.

Witness Strawn testified that he was on the train that struck the deceased, and that in his opinion it was, at the time he felt the brakes go on just before the accident, traveling at a rate of speed not less than 40 miles an hour.

It is shown that the deceased approached the track upon which the train that struck him was traveling at a rate of speed of about 18 miles an hour; that he was going north on Thompson street, and that, after driving his automobile near said track, he stopped to let a train on the north track pass; that, as soon as the train on the north track passed, he started to cross the south track, on which the train that struck him was approaching the point of accident.

It is not clearly shown how far the approaching train was from the point of the accident at the time deceased started up to cross the railroad track. One witness estimated it to be about 100 to 150 feet away, and other facts testified to would place it at 450 feet from such point.

The evidence shows that, if deceased had been looking to the west, the direction from which the train that struck him was approaching at the time he started to cross the track, he could have seen such train.

We are not prepared to hold that the facts show as a matter of law that the deceased would not have had time to safely cross the track ahead of the train had it not been running in excess of 18 miles an hour, nor are we prepared to hold the speed of the train in excess of 18 miles an hour, whatever it was, was not the proximate cause of the death of D. W. Leach, Jr. We think that, if it be conceded that both the train and the automobile were, as testified to by the engineer in charge of the engine propelling the train, traveling at a speed of 18 miles per hour, the automobile would have crossed the railroad track before the engine would have reached the point of the accident, but, had the train been unexpectedly running at a rate of speed exceeding that allowed by law, which the jury might have reasonably concluded from the evidence was 40 miles an hour, the train would have reached the point of the accident before D. W. Leach, Jr., had time to clear the railroad track.

Appellant does not question the finding of the jury that it was guilty of negligence in that it ran its train in excess of 18 miles per hour in violation of law, but insists that such finding furnishes no basis for a finding that such negligence was a proximate cause of the death of D. W. Leach, Jr. There is, we think, no merit in such contention. Leach had the right to rely upon appellant's observance of the law in running its trains, and that, as a consequence, though the train was approaching it was at a speed of only 18 miles per hour, and so relying, he undertook to cross the track ahead of it when he discovered it at a distance of 100 to 450 feet from the point of the accident, but, since the train was running in excess of 18 miles per hour, perhaps much in excess thereof, Leach was struck and killed at the point of accident.

We think the finding of the jury that the negligence of appellant in running its train at a speed in excess of 18 miles an hour in violation of law was a proximate cause of the death of D. W. Leach, Jr., is sufficiently supported by the evidence.

▆▆▆▆ By its seventh and eighth assignments appellant contends that the uncontradicted evidence shows that the deceased, D. W. Leach, Jr., was guilty of contributory negligence as a matter of law, which was the proximate cause of his death, and therefore appellees were not entitled to a recovery; if, however, deceased was not guilty of contributory negligence as a matter of law, still the finding of the jury that deceased was not guilty of contributory negligence is so against the great weight and preponderance of the evidence as to be manifestly wrong.

We overrule appellant's contention. The evidence shows that D. W. Leach, Jr., deceased, approached the south track of the railroad on which the train that struck his automobile was approaching the point of the accident, and stopped within a few feet of said track; that he waited for another train on the north track to pass; that, as this train passed the street crossing, he started his car and drove upon the south track, and was struck by the approaching train.

Mrs. Acock, testifying on cross-examination with reference to a former statement, said that she did not read such statement; that she signed it without reading it. Testifying further she said: "It is not a fact that I made the statement at that time that 'Just as soon as the rear coach of the train going out got over the crossing at Thompson Street an automobile driven by a young man passed the automobile standing at the crossing and ran onto the track right in front of the engine pulling number 102.' I did not say right in front, it wasn't right in front because the train was up in front of my house. I could not say just how far the train was from the crossing when I saw Mr. Leach drive across in front of it."

James Dickson testified in part as follows: "I couldn't hardly tell how far the engine of train No. 102 was from the Thompson Street crossing, at the time I first saw the automobile, because from where I was at that time it was coming facing me, but it didn't look like it was over a hundred or a hundred and fifty feet from the crossing."

Again: "I said that the engine was coming towards me, and therefore I couldn't tell just the distance, but as well as I could judge, it was from a hundred to a hundred and fifty feet from the crossing at the time I noticed the automobile. That is just my best judgment, I couldn't tell exactly."

N. G. Leap, engineer operating the engine which struck the automobile of deceased, testified in part as follows: "I was coming into town, as near as I can judge at about 18 or 20 miles an hour and a man came out of Thompson Street going north about the same speed as I was, and he drove upon the crossing ahead of me and we struck him."

The evidence shows that the engine pulling the west-bound train, which had just passed the crossing where the accident occurred, passed the engine pulling the east-bound train, which killed Leach, at a distance of approximately 450 feet west of the crossing.

It is shown that there were no obstructions to prevent D. W. Leach, Jr., from seeing the approaching train had he looked, and, in the absence of evidence to the contrary, we think we should presume that in the use of ordinary care for his own safety he did look. Lee v. Ry. Co., 89 Tex. 583, 36 S. W. 63; Baltimore & P. Ry. Co. v. Landrigan, 191 U. S. 461, at pages 473 and 474, 24 S. Ct. 137, 48 L. Ed. 262.

A permissible inference from the evidence is that deceased looked, and, when he did so,

he saw the approaching train that later struck him, and, seeing it 450 feet from the crossing, believing that it was not approaching at a rate of speed greater than 18 miles an hour, undertook to cross the track ahead of it. It is clear that, if as a fact the train was 450 feet from the crossing at the time deceased sought to cross the track at a speed of 18 miles an hour, starting only a few feet from the same, he would have passed over the same before the train could reach the crossing, the point of collision. Assume that deceased stood, say, 15 or 20 feet from the railroad track which he attempted to cross, that he saw the approaching train 450 feet away, did he not have the right, as he probably did, to assume that it was not violating the law, and that its approach was at a rate of speed not exceeding 18 miles an hour? We think so. If, then, such assumption had been true, deceased would not have endangered himself in attempting to cross the railroad track ahead of the train.

We are not prepared to hold that the deceased was guilty of contributory negligence, as a matter of law, by his attempt to cross ahead of the train which struck him. There was sufficient evidence to carry the issue to the jury.

■ Appellant requested the court to submit its tendered special issue asking the jury to find whether or not the collision between the train and the automobile was the result of an unavoidable accident. The court refused to submit such issue, and appellant has assigned such refusal as reversible error.

We overrule the assignment. There was no evidence whatever raising the issue of unavoidable accident.

By appellant's tenth assignment contention is made that the court erred in his definition of "proximate cause" to the injury of appellant.

We think the definition given was substantially correct; we therefore overrule appellant's complaint thereof. Houston Belt & T. R. Co. v. Davis (Tex. Civ. App.) 19 S.W. (2d) 77, at page 80, and authorities there cited; Chicago, R. I. & P. R. Co. v. Reames, 63 Tex. Civ. App. 29, 132 S. W. 977, and authorities there cited.

■ By its eleventh assignment appellant insists that the verdict of the jury awarding appellees damages in the sum of $14,500 is excessive, unsupported by any evidence, and is the result of passion, prejudice, or sympathy. In support of such assignment, it is argued that the undisputed evidence shows that the deceased at the time of his death was living apart from appellees, and that he had contributed but little, if anything, to either of them.

While the award is large, and perhaps more than we would have awarded under the evidence had we the authority to make the same, we are not prepared to hold that the award made by the jury was unsupported by evidence, or that the verdict shows that it was the result of passion, prejudice, or sympathy.

It was shown that the deceased at the time of his death was 25 years of age; that he left surviving him his wife, Mrs. Pearl Leach, and a daughter, Charlotte Pearl Leach, who was 3 years of age at the time of the trial of this suit.

Mrs. Pearl Leach testified that her deceased husband, D. W. Leach, Jr., at the time they lived on North Main street, worked at a compress for about 9 months at an average salary of $65 every 2 weeks; that during their married life her husband had worked as a salesman selling machines for nine months; that for the 6 weeks next before his death her husband was engaged as an automobile salesman, and that just prior to such time he had been working for the Essex people; that prior to the time he had worked for the Essex people he had been out of work for about 6 months; that during their married life her husband was industrious and diligent about his work, tried to keep employed all the time; that he loved her and their baby daughter, and provided for them as best he could, and used his earnings for their support.

Testifying further, she said: "I incurred some obligations with reference to the burial and funeral of my husband as the result of this accident. I also had a Doctor with him at the hospital, and there was also a hospital bill. The funeral bill amounted to more than Five Hundred and Fifty Dollars ($550.-00), I do not remember the exact figures; the hospital bill was Thirty-eight Dollars and fifty cents ($38.50), if I recollect, and the Doctor bill was Twenty-five Dollars ($25.00)."

Again she said:

"My husband's father and mother were not living together at that time; they had been divorced and each of them had remarried. Both his father and mother were living in Houston at that time, however. My husband's father was D. W. Leach, Sr., and his mother was Mrs. A. J. Baier. During that time my husband used all of the money that he earned for the support of myself and the baby, he did not contribute anything to his father and mother. When I came back home from Fort Worth I found that my husband had moved to his mother's home. When I got back my husband and I arranged that I should live at his father's and he would live on with his mother. We did not make that arrangement immediately after I got back from Fort Worth, but about three weeks later. The first two or three weeks after I returned from Fort Worth we all lived at his mother's home, and then we made this ar-

rangement whereby the baby and I went to live at his father's home and he stayed with his mother. We made that kind of an arrangement because we hated to be living off of one of them like that, and he thought it would be better if we divided up. It was satisfactory with both his father and his mother for us to make that kind of arrangement. * * *

"During the time I lived there at my husband's father's home my husband would come over and spend the week-ends with us. When he would come over to see us he would occupy the same room as the baby and myself."

C. L. Leach testified that D. W. Leach, Jr., was a very industrious young man.

The facts stated refute the inference stated in appellant's assignment to the effect that deceased was living apart from his wife and child, amounting to an abandonment of them.

Deceased had a life expectancy of 40 years or more at the time of his death.

For the reasons pointed out, the judgment is affirmed.

Affirmed.

### On Motion for Rehearing.

Counsel for appellant, on motion for rehearing, calls our attention to the fact that, after stating in our original opinion that D. W. Leach, Jr., deceased, approached the railway track at a speed of 18 miles per hour and stopped within about 15 feet of the south track to let a train on the north track pass, we, in a subsequent paragraph of the opinion, in effect, argue that it was shown that Leach, after having started up after his stop, approached the railway track at a speed of 18 miles per hour, and that, had the train not been exceeding a speed of 18 miles an hour, Leach, who was moving at the same rate, would have crossed the railway at the point of the accident before the train which struck him could have reached such point.

We admit that we were in error in assuming that it was shown by the evidence that Leach, after he had stopped within 15 feet of the railway track, approached such track at a speed of 18 miles per hour. As a fact, the speed at which he approached such track after making such stop is not shown; however, it is shown that at the rate of speed at which he was approaching he reached and drove upon the railway track ahead of the train that struck him. It is thus made apparent that, had the train been approaching the point of the accident from a distance of 450 feet at a rate of speed of only 18 miles per hour, instead of 40 miles per hour, the deceased would have had ample time to clear the track before the train could reach the point of the accident; such being a fact, our erroneous statement as to the speed of Leach in driving upon the track is harmless.